IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

SYNGENTA CROP PROTECTION AG, )
Plaintiff, )
)
v. ) Civil Action No. 3:25CV735 (RCY)
)
UPL LIMITED, *et al.*, )
Defendants. )
)

**MEMORANDUM OPINION**

This is a declaratory judgment action brought by Plaintiff Syngenta Crop Protection AG ("Plaintiff"), wherein Plaintiff seeks declaratory judgment that two of Defendants' patents are unenforceable and that Defendants have violated certain federal antitrust laws. The case is before the Court on Defendants UPL Limited, UPL Corporation Limited, and UPL NA Inc.'s (collectively "Defendants") Motion to Transfer, filed pursuant to 28 U.S.C. § 1404, seeking transfer of this matter to the U.S. District Court for the Eastern District of North Carolina. The motion has been fully briefed, and the Court dispenses with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and oral argument would not aid in the decisional process. E.D. Va. Loc. Civ. R. 7(J). For the reasons stated below, the Court will grant Defendants' Motion to Transfer.

**I. BACKGROUND**

Plaintiff is a corporation organized and existing under the laws of Switzerland and has its principal place of business in Basel, Switzerland. Am. Compl. ¶ 2, ECF No. 37. Plaintiff develops and produces crop protection products including fungicides, pesticides, and herbicides. *Id*.

Defendant UPL Limited ("UPL Ltd.") is a corporation organized and existing under the laws of India and has its principal place of business in Mumbai, India. *Id*. ¶ 3. UPL Ltd. produces ingredients for crop protection products and sells these products globally. *Id*. One such product

is Mancozeb, one of the most widely used fungicides globally. *Id*. UPL Ltd. is the assignee of the two patents at issue in this case, the '727 patent and the '625 patent. *Id*. ¶ 7.

Defendant UPL Corporation Limited ("UPL Corp.") is a corporation organized and existing under the laws of the Republic of Mauritius and has its principal place of business in the United Kingdom. *Id*. ¶ 4. UPL Corp. produces and markets crop protection products worldwide for UPL companies.

Defendant UPL NA Inc. ("UPL NA") is a corporation organized and existing under the laws of the State of Delaware and has it principal place of business in Cary, North Carolina.[1] Mem. Supp. Mot. Transfer 6, ECF No. 42.[2] UPL NA is involved in the distribution and sales of crop protection products for the UPL companies. Am. Compl. ¶ 5.

UPL Ltd. wholly owns UPL Corp. and UPL NA, and UPL Ltd. directs and manages the operations of its subsidiary companies. *Id*. ¶ 6.

## II. RELEVANT PROCEDURAL HISTORY

Plaintiff filed a Complaint on September 11, 2025, originally in the Alexandria Division of this Court, but after intradistrict transfer, the matter was assigned to the undersigned. ECF No. 1. On November 3, 2025, Plaintiff filed an Amended Complaint. ECF No. 37. On December 18, 2025, Defendants filed a Motion to Transfer Case to the Eastern District of North Carolina ("Motion to Transfer") and Memorandum in Support. ECF Nos. 41, 42. On December 31, 2025,

[1] In the Amended Complaint, Plaintiff describes UPL NA as having its principal place of business in Pennsylvania. Am. Compl. ¶ 5. However, Defendants submit a sworn declaration stating that Defendant UPL NA's principal place of business is located in Cary, North Carolina. Amos Decl. ¶¶ 4, 7, ECF No. 42-4. Cary, North Carolina, is located in Wake County, which is within the Eastern District of North Carolina. *See id*.; United States District Court, Eastern District of North Carolina, *County Map*, https://www.nced.uscourts.gov/counties/Default.aspx. Defendants also supply a record from the Pennsylvania Secretary of State that shows on May 9, 2025—four months before the action was filed—UPL NA changed its principal address to one located in Cary, North Carolina. Exs. 3–4, Reply, ECF Nos. 47-4, 47-5.

[2] The Court adopts the pagination applied by the CM/ECF system and not the page numbers found on the documents themselves.

Plaintiff filed its Memorandum in Opposition to the Motion to Transfer ("Response in Opposition"). ECF No. 46. On January 6, 2026, Defendants filed a Reply to Plaintiff's Response in Opposition ("Reply"). ECF No. 47. Thus, the Motion to Transfer is ripe for review.

## III. LEGAL STANDARD: § 1404 TRANSFER

Under 28 U.S.C. § 1404(a), a civil action may be transferred to another district or division if "(1) the claims might have been brought in the transferee forum, and (2) [the] interest of justice and convenience of the parties and witnesses justify transfer to that forum." *Va. Innovation Scis., Inc. v. Samsung Elecs. Co.*, 928 F. Supp. 2d 863, 867 (E.D. Va. 2013) (quoting *Koh v. Microtek Int'l., Inc.*, 250 F. Supp. 2d 627, 630 (E.D. Va. 2003)). The party seeking transfer "bears the burden of proving that the circumstances of the case are *strongly* in favor of transfer." *Heinz Kettler GMBH & Co. v. Razor USA, LLC*, 750 F. Supp. 2d 660, 667 (E.D. Va. 2010) (emphasis in original) (cleaned up). However, "the ultimate decision [of whether to transfer a case] is committed to the sound discretion of the district court." *Pragmatus AV, LLC v. Facebook, Inc.*, 769 F. Supp. 2d 991, 994 (E.D. Va. 2011); *see also Koh*, 250 F. Supp. 2d at 630. In deciding a motion to transfer, the pleadings need not be accepted as true, and the Court may consider evidence outside the pleadings, including affidavits and declarations. *W. Ref. Yorktown, Inc. v. BP Corp. N. Am. Inc.*, 618 F. Supp. 2d 513, 516 (E.D. Va. 2009) (citing *Sucampo Pharms., Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 549–50 (4th Cir. 2006)).[3]

## IV. ANALYSIS

Applying the § 1404(a) factors, the Court finds that Defendants have sufficiently established that the circumstances of this case are strongly in favor of transfer.

[3] Here, the Court considers various declarations and exhibits submitted by the parties in support of their respective positions on the instant motion to transfer.

## A. This Action Could Have Been Brought in the U.S. District Court for the Eastern District of North Carolina

In the first step of the two-step motion to transfer inquiry, the movant must establish that the action could originally have been brought in the proposed transferee district, which requires that "both venue and jurisdiction with respect to each defendant" be proper there. *Long v. Koninklijke Luchtvaart Maatschappij, N.V.*, 2024 WL 23149, at *2–3 (E.D. Va. Jan. 2, 2024) (quoting *Koh v. Microtek Int'l, Inc.*, 250 F. Supp. 2d 627, 631 (E.D. Va. 2003)). Said more succinctly, the plaintiff must have been able to file suit in the transferee district in the first instance. *See Va. Innovation Scis., Inc. v. Samsung Elecs. Co.*, 928 F. Supp. 2d 863, 868 (E.D. Va. 2013). The Court concludes that Defendants have satisfied step one.

1. <u>The U.S. District Court for the Eastern District of North Carolina Would Have Subject Matter Jurisdiction Over Plaintiff's Claims</u>

Plaintiff's claims related to the two patents arise under federal patent law, so the same statutory subject matter jurisdiction pleaded in this Court would exist in the transferee court under 28 U.S.C. § 1331 and § 1338(a). *See* Am. Compl. ¶ 40, ECF No. 37. Likewise, Plaintiff's antitrust claims arise under federal law, specifically, § 2 of the Sherman Act, and fall within federal question jurisdiction and antitrust jurisdiction under 28 U.S.C. § 1331 and § 1337. *See id.* ¶¶ 45–46. Accordingly, the transferee court would have subject matter jurisdiction over Plaintiff's claims.

2. <u>The U.S. District Court for the Eastern District of North Carolina Would Have Personal Jurisdiction Over Each Defendant</u>

The transferee court must have personal jurisdiction, general or specific, over each Defendant. The Court determines that it does.

*a. The Transferee Court Would Have General Personal Jurisdiction Over Defendant UPL NA*

"General jurisdiction permits the court to hear any and all claims against the defendant, regardless of where the claims arose or the plaintiff's citizenship." *Fidrych v. Marriott Int'l, Inc.*,

952 F.3d 124, 131 (4th Cir. 2020). "With respect to a corporation, the place of incorporation and principal place of business are paradigm . . . bases for general jurisdiction." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (cleaned up). Here, Defendants have sufficiently shown that Defendant UPL NA, a corporation, maintains its principal place of business in the transferee district, despite Plaintiff's original contention that UPL NA's principal place of business was in Pennsylvania. *See supra* note 1. The transferee district would thus have general jurisdiction over Defendant UPL NA.

*b. The Transferee Court Would Have Specific Jurisdiction Over Defendants UPL Corp. and UPL Ltd.*

"The Supreme Court has outlined three factors relevant to specific personal jurisdiction." *Apple Inc. v. Zipit Wireless, Inc.*, 30 F.4th 1368, 1375 (Fed. Cir. 2022). Specifically,

> [i]n ascertaining whether the exercise of specific personal jurisdiction is appropriate in a given case, we consider: (1) whether the defendant purposefully directed its activities at residents of the forum; (2) whether the claim arise[s] out of or relate[s] to the defendant's activities within the forum; and (3) whether assertion of personal jurisdiction is reasonable and fair."

*Id.* (cleaned up). Important here as to Plaintiff's patent claims, nothing in 35 U.S.C § 293 *requires* suits to be brought in the Eastern District of Virginia. *Asia Vital Components Co. v. Asetek Danmark A/S*, 2016 WL 9175601, at *2 (E.D. Va. Dec. 13, 2016).

*i. <u>UPL Corp.</u>*

While the transferee district cannot exercise general jurisdiction over Defendant UPL Corp., it may exercise specific jurisdiction over this defendant. The relevant questions here are whether Defendant UPL Corp. deliberately established forum contacts and whether Plaintiff's claims arise out of or relate to those contacts. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358–63 (2021). The Court answers each in the affirmative.

Plaintiff itself alleges that Defendant UPL Corp. maintains a place of business in the transferee district and that its "primary activity is the production and marketing of crop protection

products worldwide for the UPL companies." Am. Compl. ¶ 4. Regarding the antitrust claims, Plaintiff brings Counts Four, Five, and Six against the UPL entities collectively based on their production, sale, and alleged monopolization of crop protection products and further alleges that all Defendants transact interstate business. *Id.* ¶¶ 45–48, 223–45. Defendant UPL Corp.'s argument and evidence reinforce a conclusion that its purposeful contacts with the transferee district are sufficiently related to Plaintiff's antitrust claims. *See* Amos. Decl. ¶ 9, ECF No. 42-4 (stating that UPL Corp. "transacts business related to the alleged facts underlying the antitrust claims in the [transferee district]").

The same can be said for Plaintiff's patent claims. *See Asia Vital*, 2016 WL 9175601, at *2 (noting that in a declaratory judgment invoking the threat of an infringement suit, the personal jurisdiction inquiry is focused on "whether other activities relate to the enforcement of those patents in the proposed form," including, *inter alia*, "maintaining a relationship with an exclusive licensee headquartered or doing business in the forum state and maintaining sales agents in the forum state" (cleaned up)). In bringing the patent claims, Plaintiff asserts that Defendants collectively "created a reasonable apprehension for [Plaintiff] that . . . UPL would sue for patent infringement." Am. Compl. ¶ 39. Defendant UPL Corp.'s arguments and evidence reinforce a finding that UPL Corp.'s relationship with UPL NA in the transferee district is sufficient for the transferee district to exercise specific jurisdiction over UPL Corp. as to Plaintiff's patent claims. *See* Mem. Supp. 15 ("North Carolina is the situs of . . . UPL Corp.'s U.S.-based operations relating to the underlying claims."); *id.* at 8 (noting that affiliate employee, Watson, represented the UPL entities collectively in discussions related to UPL's patent enforcement).

Thus, the Court finds that Defendant UPL Corp.'s business presence and activities in the transferee district establish the purposeful forum affiliation and claim relationship necessary for the transferee court to exercise specific jurisdiction over Defendant UPL Corp.

*ii. UPL Ltd.*

Similar to the above discussion related to UPL Corp., the transferee district could also exercise specific jurisdiction over Defendant UPL Ltd. Regarding Plaintiff's patent claims, UPL Ltd. is the parent company of UPL NA, and it delegated authority to Mr. Watson, an employee of UPL NA, to engage in discussions with Plaintiff related to the purported patent enforcement threats in 2022, which are the basis of Plaintiff's claims in Counts One, Two, and Three. *See* Am. Compl. 21 ("During that discussion [July 20, 2022. between UPL and Plaintiff representatives], [] Watson of UPL asserted the UPL patent position was strong."); Amos Decl. ¶¶ 12–13, ECF No. 42-4 (noting that "UPL Ltd. delegated authority to Mr. Watson to engage in discussions with [Plaintiff]" and that "Mr. Watson's corporate office is located [in the transferee district]"). When analyzing the "other activities" of UPL Ltd. and when considering whether the exercise of jurisdiction comports with due process, this Court is satisfied that the transferee district would have specific jurisdiction over UPL Ltd. based on UPL Ltd.'s purposeful activities in the transferee district and the relationship between those activities and Plaintiff's patent claims. *See Asia Vital*, 2016 WL 9175601, at *2.

Regarding Plaintiff's antitrust claims, the Court is also satisfied that the transferee district would have specific jurisdiction over UPL Ltd. based on its activities in the transferee district and the relationship between those activities and Plaintiff's antitrust claims. Plaintiff's own allegations related to its antitrust claims support such determination. *See, e.g.*, Am. Compl. ¶ 162 ("UPL [collectively, including UPL Ltd.] has achieved and has maintained a monopoly in the multisite fungicide combinations market for years."). Given that UPL Ltd. is the parent of UPL NA, headquartered in the transferee district, and that UPL Ltd.'s business related to the antitrust claims occurs in the transferee district*, see* Amos Decl. ¶ 9 ("UPL Ltd., UPL Corp., and UPL NA are crop protection companies, and as explained below, each transacts business related to alleged facts

underlying the antitrust claims in the Eastern District of North Carolina"), the transferee district could properly exercise specific jurisdiction over UPL Ltd. related to Plaintiff's antitrust claims.

Thus, the Court finds that Defendant UPL Ltd.'s business presence and activities in the transferee district establish the purposeful forum affiliation and claim relationship necessary for the transferee court to exercise specific jurisdiction over Defendant UPL Ltd.

3. <u>Venue Is Proper in the U.S. District Court for the Eastern District of North Carolina</u>

Regarding venue, the Court agrees with Defendants that venue would have been proper in the transferee district at the time Plaintiff initiated this matter.

*a. Declaratory Action Concerning the Patents*

In declaratory actions concerning the unenforceability or invalidity of a patent—here, Counts One, Two, and Three—venue is governed by the general venue statute, 28 U.S.C. § 1391, rather than the patent infringement venue provision of 28 U.S.C. § 1400(b). *Gen. Tire & Rubber Co. v. Watkins*, 326 F.2d 926, 929 (4th Cir. 1964). Defendants UPL Ltd. and UPL Corp. are foreign corporations and therefore "may be sued in any judicial district." 28 U.S.C. § 1391(c)(3). Their joinder is disregarded when determining venue as to domestic defendants. *Id*. Defendant UPL NA is subject to general jurisdiction in the transferee district and therefore resides there for venue purposes. *See id*. § 1391(c)(2), (d). Because the only domestic Defendant resides in the transferee district and the two remaining Defendants are foreign entities, venue is proper under 28 U.S.C. § 1391.

*b. Declaratory Action Concerning Federal Antitrust Law*

In declaratory actions concerning federal antitrust laws, here Plaintiff's Counts Four, Five, and Six, venue is proper in a district where a corporation "is an inhabitant" or where a corporation "may be found or transacts business." 15 U.S.C. § 22. The term, "transacts business" is assessed according to practical commercial realities and is satisfied by business of a substantial character.

*Eastman Kodak Co. of N.Y. v. S. Photo Materials Co.*, 273 U.S. 359, 373–74 (1927); *United States v. Scophony Corp. of Am.*, 333 U.S. 795, 807–08 (1948). The term, "may be found" "is the equivalent of saying that it must be present there by its officers and agents carrying on the business of the corporation." *Aro Mfg. Co. v. Auto. Body Rsch. Corp.*, 352 F.2d 400, 404 (1st Cir. 1965).

Defendant UPL NA maintains its corporate headquarters in the transferee district, and its officers and directors conduct business out of this location, thus Defendant UPL NA "may be found" in the transferee district for venue under § 15 of the Sherman Act. Regarding the foreign Defendants, UPL Ltd. and UPL Corp., the general venue statute supplements the special venue statute and allows these foreign Defendants to be sued in any federal judicial district. *See Dee-K Enters., Inc. v. Heveafil Sdn. Bhd.*, 982 F. Supp. 1138, 1149 (E.D. Va. 1997); *see also Cumberland Truck Equip. Co. v. Detroit Diesel Corp.*, 401 F. Supp. 2d 415, 420 (E.D. Pa. 2005) (discussing that the antitrust special venue rules may be supplemented by the general venue rules for alien corporations).

**B. The Interest of Justice and Convenience of the Parties and Witnesses Justify Transfer**

Having determined that venue and jurisdiction are proper in the transferee district, the second step of the transfer analysis requires the Court to "conduct a balancing test to determine whether transfer is warranted, considering the following four factors: (1) plaintiff's choice of forum; (2) the convenience of the parties; (3) witness convenience and access; and (4) the interest of justice." *Long*, 2024 WL 23149, at *2 (citing *Heinz*, 750 F. Supp. 2d at 667). The Court will discuss each factor in turn.

1. <u>Plaintiff's Choice of Forum Is Entitled to Minimal Weight</u>

"The general rule that 'a plaintiff's choice of venue is entitled to substantial weight in determining whether transfer is appropriate' is conditioned on the plaintiff establishing 'a legitimate connection to the district in the first instance.'" *Audio Pod IP, LLC v. Amazon.com,*

*Inc.*, 2026 WL 1763252, at *8 (E.D. Va. June 18, 2026) (first quoting *Trs. of the Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs.*, 791 F.3d 436, 444 (4th Cir. 2015); then quoting *Pragmatus*, 769 F. Supp. 2d at 995). Said differently, deference to the plaintiff's choice of forum is reduced when the plaintiff does not reside in the chosen forum and the forum lacks a substantial connection to the operative facts. *Advanced Mktg. Sys., LLC v. Delhaize Am., LLC*, 2015 WL 12806533, at *3 (E.D. Va. July 31, 2015); *Sunstone Info. Def., Inc. v. F5 Networks, Inc.*, 2021 WL 5804571, at *3 (E.D. Va. Dec. 7, 2021).

Plaintiff argues that its choice to litigate in this district is entitled to substantial weight based on this district having "significant connection . . . as the site of UPL Ltd.'s inequitable conduct in obtaining the patents at issue," and that Defendants' alleged conduct before the U.S. Patent and Trademark Office ("USPTO") establishes part of the factual nexus for the claims asserted in this district. Resp. Opp'n 14–15. However, as Defendants argue, courts in this district "have had no qualms about transferring patent cases to other jurisdictions despite the location of the USPTO." *Finmeccanica S.p.A. v. Gen. Motors Corp.*, 2007 WL 4143074, at *4 (E.D. Va. Nov. 19, 2007). Plaintiff's argument is unmoving. While 35 U.S.C § 293 makes this district a permissible forum, it does not itself create a substantial local/factual nexus to this district. *Asia Vital*, 2016 WL 9175601, at *2.

Furthermore, neither Plaintiff nor Defendants reside in this district, and beyond the allegations related to Defendants' conduct before the USPTO discussed above, there are no events giving rise to Plaintiff's causes of action that occurred in this district. *See* Mem. Supp. 12 ("[N]one of UPL's purported anticompetitive activities . . . are alleged to have occurred in Virginia."). Thus, Plaintiff's choice of form is given little weight. *See Finmeccanica*, 2007 WL 4143074, at *4.

2. <u>The Convenience of the Parties Favors Transfer</u>

The next factor, the convenience of the parties, favors transfer to the Eastern District of North Carolina. In analyzing this factor, "courts must consider 'ease of access to sources of proof, the costs of obtaining attendance of witnesses, and the availability of compulsory process.'" *Long*, 2024 WL 23149, at *5 (quoting *Byerson v. Equifax Info. Servs., LLC*, 467 F. Supp. 2d 627, 633 (E.D. Va 2006)). The residence of the parties is a "logical starting point" when discussing this factor. *Mullins v. Equifax Info. Servs, LLC*, 2006 WL 1214024, at *6 (E.D. Va Apr. 28, 2006). Transfer is not appropriate if it would simply shift inconvenience from one side to another. *Heinz Kettler*, 750 F. Supp. 2d at 668.

Here, transfer does more than shift equivalent inconvenience. Defendant UPL NA's principal place of business and corporate headquarters are in the transferee district, and neither Plaintiff nor Defendants have comparable operations in this district. *See* Amos Decl. ¶¶ 4, 7, ECF No. 42-4; ECF Nos. 47-4, 47-5. With respect to Plaintiff, UPL Corp., and UPL Ltd., all of which are foreign entities, neither this district nor the transferee district is more or less convenient, in terms of arranging international travel to participate in the litigation.[4] Thus, the parties' residence—primarily that of Defendant UPL NA—favors transfer.

Although Defendants identify that relevant documents are primarily stored in the transferee district, this factor is de minimis in the Court's analysis. *Long*, 2024 WL 23149, at *5 ("[C]onsidering the ease of access to sources of proof, courts have recognized that when information is available electronically, this 'factor is de minimis and not entitled to substantial weight.'" (quoting *Hill-Green v. Experian Info. Sols., Inc.*, 2020 WL 5539042, at *8 (E.D. Va. Sep. 15, 2020))). Regarding the availability of compulsory process, the Court finds this factor is

[4] There is a possible tipping of the scale towards the transferee district being slightly more convenient for the foreign Defendants UPL Corp. and UPL Ltd., insofar as they are conceivably not *un*familiar with arranging travel there in light of that being home to UPL NA's headquarters.

neutral, as neither party has identified witnesses who are beyond compulsion who will not voluntarily appear.

Overall, the Court finds the convenience of the parties favors transfer.

3. The Convenience of Witnesses Favors Transfer

Regarding the next factor, witness convenience, "the party asserting witness inconvenience has the burden to proffer, by affidavit or otherwise, sufficient details respecting the witnesses and their potential testimony to enable the court to assess the materiality of evidence and the degree of inconvenience." *Heinz Kettler*, 750 F. Supp. 2d at 668. The Court draws a distinction between party and non-party witnesses and gives non-party witnesses more weight. *Long*, 2024 WL 23149, at *6.

Defendants identify several party witnesses including Watson and the four patent inventors. Mem. Supp. 13. Each of these witnesses is UPL-affiliated, and Watson has his corporate office in the transferee district but works remotely most of the time. *Id*. The patent inventors reside abroad but work in the transferee district when they are working in the United States. *Id*. Defendants do not identify any non-party witnesses.

Plaintiff identifies a patent-law expert who resides in this district, as well as "certain fact witnesses," including Defendants' patent counsel who appeared on behalf of Defendants before the USPTO, who also reside in or near this district. Resp. Opp'n 18 (noting that Defendants' patent counsel has offices in Washington D.C., closer to this district than the transferee district). Regarding Plaintiff's retained expert, the Court notes that the convenience of compensated experts generally is not material to this analysis. *See In re Ralston Purina Co.*, 726 F.2d 1002, 1006 n.6 (4th Cir. 1984). Regarding the location of counsel in Washington, D.C., this is not a proper consideration for purposes of transfer. *See Seaman v. IAC/InterActiveCorp, Inc.*, 2019 WL 1474392, at *5 n.7 (E.D. Va. Apr. 3, 2019).

The Court finds the third factor, witness convenience, favors transfer, albeit minimally.

4. <u>The Interest of Justice Favors Transfer</u>

"The last factor for the Court to consider is 'the interest of justice,' which encompasses public interest factors aimed at 'systemic integrity and fairness.'" *Seaman v. IAC/InterActiveCorp, Inc.*, 2019 WL 1474392, at *7 (E.D. Va. Apr. 3, 2019) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 30 (1988)). When considering integrity, important to the Court is judicial economy and the avoidance of inconsistent judgments. *Id*. When considering fairness, important to the Court is docket congestion, local interest, familiarity with governing law, jury burden, and unnecessary conflicts of law. *Long*, 2024 WL 23149, at *8–10.

Most of the considerations are neutral, except for local interest and docket congestion. Local interest favors the transferee district as Defendant UPL NA is headquartered there and no party has substantial operations in this district. *See NanoEntek, Inc. v. Bio-Rad Lab'ys, Inc.*, 2011 WL 6023189, at *7 (E.D. Va. Dec. 2, 2011). Judicial economy is largely neutral. There is no related case in the transferee district presenting a consolidation advantage, but this Court has not issued a substantive merits ruling that would cause substantial judicial effort to be lost through transfer. Plaintiff argues that docket congestion favors this district since its time-to-trial for a patent case is quicker than that of the transferee district, but that argument cuts both ways. *See, e.g.*, *Pragmatus*, 769 F. Supp. 2d at 997 (noting that this district's reputation as the "rocket docket" is attractive to plaintiffs in complex litigation but warning that this reality may invite forum shopping).

The Court finds that the interest of justice weighs in favor of transfer, albeit minimally.

Taken together, the above factors strongly favor transfer to the Eastern District of North Carolina. Unlike a transfer that merely exchanges one equally connected forum for another, in this case, transfer places the action in the district that is home to one of the Defendants and that

presents as a more convenient forum. There are no compelling ties between this district and the instant suit, to counterbalance the connections to the Eastern District of North Carolina. The Court therefore finds that transfer is in accordance with 28 U.S.C. § 1404(a)'s purpose to permit a transfer to the materially more convenient forum, not merely an equally convenient one. *See Van Dusen v. Barrack*, 376 U.S. 612, 646 (1964).

## V. CONCLUSION

For the reasons detailed above, Defendants have carried their burden to demonstrate that the circumstances strongly favor transfer. Accordingly, Defendants' Motion to Transfer will be granted and the Court will transfer this matter to the United States District Court for the Eastern District of North Carolina.

An appropriate Order shall issue.

/s/
Roderick C. Young
United States District Judge

Date: September 30, 2026
Richmond, Virginia